■ ANGELO J. APONTE, as Commissioner of the Department of Consumer Affairs of the City of New York, et al., Respondents, v LEO RAYCHUK, Appellant.—Order, Supreme Court, New York County (Karla Moskowitz, J.), entered October 31, 1989, which denied defendant-appellant's motion to vacate a default judgment entered March 21, 1989; and judgment of said court, entered March 13, 1990, which, following a hearing, imposed penalties against defendant-appellant in the amount of $206,600 and awarded investigatory costs in the amount of $275 to plaintiffs-respondents, unanimously affirmed, without costs.

In January 1987, defendant-appellant, an attorney, began advertising his services in two newspapers, *The New York Post* and *El Diario,* as follows:

"DIVORCE

"LOW FEE

"POSSIBLE 10 DAYS

"GREEN CARD

"L. RAYCHUK, Atty. at Law

"250 W. 57th St., Rm. 1417, N.Y.C.

"212-581-6800".

By Notice of Violation dated March 5, 1987, the Department of Consumer Affairs charged that defendant was in violation of the New York City Consumer Protection Law (Administrative Code of City of New York § 20-700), in that his advertisements "contained false and misleading written statements,

which have the capacity, tendency or effect of deceiving or misleading consumers". Despite the issuance of this notice by the City's watchdog consumer agency, defendant continued to run the ads.

When subpoenaed by Consumer Affairs on December 2, 1987, to provide copies of all ads placed after March 3, 1987, defendant answered by letter dated January 12, 1988, which established that the offending ads had appeared in two newspapers, four days per week, from January 1, 1987 through January 8, 1988, except for a few specified holidays. Defendant continued to run the ads until Consumer Affairs commenced litigation and obtained a temporary restraining order on March 25, 1988.

On April 4, 1988, the IAS part heard argument on plaintiffs' motion for a preliminary injunction, and granted relief to the extent of enjoining defendant from using the words "POSSIBLE 10 DAYS" unless the advertisements were revised so as to include "all material restrictions, limitations and exceptions to his being able to procure a divorce in such a period of time".[1]

Thereafter, plaintiffs served an amended complaint, dated August 1, 1988 and, upon defendant's failure to file an amended answer, moved for, and were granted, a default judgment. Defendant now appeals from an order denying his motion to vacate the default judgment and from a judgment which assessed penalties and costs totalling $206,875 against him, following a hearing at which he declined to introduce evidence make a closing statement, or otherwise offer rebuttal. We affirm.

It is well-established that a party seeking vacatur of a default judgment must demonstrate both a reasonable excuse for his default and a meritorious defense to the action. (Eugene Di Lorenzo, Inc. v Dutton Lbr. Co., 67 NY2d 138, 141; Tandy Computer Leasing v Video X Home Lib., 124 AD2d 530, 531.) In the case of bar, defendant argued that a timely amended answer was not filed due to law office failure. Specifically, defendant stated that the amended complaint had inadvertently been filed before it could be diaried for service of an amended answer.

Pursuant to CPLR 2005, a court is not precluded as a

---

1. By order entered April 26, 1990, this Court affirmed the IAS part's determination and rejected defendant's argument that attorney advertising is exclusively regulated under the New York State Judiciary Law. (Aponte v Raychuk, 160 AD2d 636.)

matter of law "from exercising its discretion in the interests of justice to excuse delay or default resulting from law office failure." This section was enacted in 1983 to overcome the restrictions arising from *Barasch v Miccucci* (49 NY2d 594, 599) and *Eaton v Equitable Life Assur. Socy.* (56 NY2d 900), which held that a court was without such discretion. The statute's salutary purpose does not, however, "guarantee that a default will be excused in all cases". *(Grosso v Hauck,* 99 AD2d 750.) Rather, the determination is one which is left to the sound discretion of the trial court.

The within defendant argues that "the lower court erred, as a matter of law, in concluding that it lacked the power to vacate the default judgment". However, we discern no such error in this record. Indeed, prior to granting plaintiffs' motion, the IAS part observed that there was no absolute rule entitling plaintiffs to a default judgment for law office failure, and that such a determination was to be based upon the weighing of various factors, among them the particular excuse for the failure. *(County of Nassau v Cedric Constr. Corp.,* 100 AD2d 890, 891-892; *La Buda v Brookhaven Mem. Hosp. Med. Center,* 98 AD2d 711, *affd* 62 NY2d 1014.) In applying these standards, the IAS part concluded that the failure to properly diary was an inadequate excuse *(see, Verre v Rosas,* 47 NY2d 795, 796) and, additionally, that defendant had failed to demonstrate a meritorious defense to the action. Our examination of this record leads us to agree.

Defendant continued to run the offending ad despite the notice of violation by the Department of Consumer Affairs, and despite the ambiguity inherent on the face of the ad. As previously determined by this Court, defendant's claim that his advertising was exclusively regulated under the Judiciary Law—which presumably served as the basis for his ignoring of the violation and his repeated failure to respond and/or defend[2]—was without merit. Defendant took this risk when he

---

2. A more complete chronology of the events culminating in this appeal is appended hereto as "Attachment A".

ATTACHMENT A

3/5/87 Consumer Affairs notified defendant that his ad violated Consumer Protection Law (Administrative Code of City of New York) § 20-700 through its "false and misleading written statements, which have the capacity, tendency or effect of deceiving or misleading consumers in that you state a divorce can be obtained in possibly ten (10) days."

[Defendant continued to place the ads.]

12/2/87 Consumer Affairs issued a subpoena seeking copies of all ads offering defendant's legal services appearing in New York City newspapers after March 3, 1987.

1/12/88 Defendant responded to the subpoena by letter providing the dates and the names of the two newspapers. His letter established that the ads were placed four days per week in two newspapers from January 1, 1978 through January 8, 1988 (right up to the time of the letter), with the exception of certain holidays.

2/18/88 Consumer Affairs informed defendant that he was found to have engaged in repeated, multiple, and persistent violations of Administrative Code § 20-700, and that action would be taken unless he demonstrated, within five days, that he had not violated this law.

[Defendant failed to respond and continued to run the ads.]

3/25/88 Consumer Affairs commenced litigation and obtained a temporary restraining order preventing defendant from continuing the ads.

4/4/88 Oral argument was heard with respect to the application by Consumer Affairs for a preliminary injunction. Defendant argued, *inter alia*, that only the Appellate Division had jurisdiction to regulate conduct alleged to be fraudulent on the part of an attorney.

6/30/88 Justice Moskowitz granted the preliminary injunction to the extent that defendant was enjoined from using the words "Possible 10 Days" in the ads.

[On April 26, 1990, this Court affirmed that order *(Aponte v Raychuk,* 160 AD2d 636), stating that there is "no inconsistency between the local law and the legislative delegation of authority to this court to regulate the conduct of attorneys."]

7/25/88 Defendant served an answer consisting of general denials and containing a counterclaim for defamation.

8/10/88 Consumer Affairs served an amended complaint upon defendant.

8/26/88 Consumer Affairs served plaintiffs' First Set of Interrogatories.

[Defendant failed to answer interrogatories.]

11/2/88 Consumer Affairs moved for default judgment.

12/13/88 Defendant served an untimely amended answer.

3/13/89 Justice Moskowitz awarded a default judgment to Consumer Affairs on its claim for a permanent injunction and set the matter down for an assessment of damages. (The court also granted summary judgment to Consumer Affairs on defendant's counter-claim for defamation, an issue not appealed.)

4/7/89 Defendant filed a notice of appeal.

[On February 8, 1990, this Court dismissed defendant's appeal as "abandoned".]

4/19/89 Defendant moved the IAS part for reargument.

8/8/89 Defendant's motion for reargument was denied on the ground that he failed to establish that the court had overlooked material facts and/or misapprehended applicable law.

8/29/89 Defendant moved to vacate the default judgment, citing law office failure, namely, that the amended complaint was not properly entered into the diary "for submission of an amended answer".

10/31/89 Justice Moskowitz granted defendant's motion to the extent of permitting oral argument, while noting that defendant's claims were essentially a reiteration of his prior motion for reargument. At the conclusion of the argument, she denied the motion for vacatur on the ground that defendant had failed to raise any points not previously considered and rejected. The Judge specifically rejected defendant's law office failure excuse

remained undeterred from running the advertisement.

Finally, having chosen to take no action to defend himself at the hearing on damages and to accept, without objection or rebuttal, all of the evidence and arguments submitted by the Department of Consumer Affairs regarding penalties, defendant may not now be heard to claim that the penalties ultimately imposed were excessive. We note, indeed, that the penalties imposed were the minimum which could be meted out for the uncontested violations which defendant committed. *(See,* Administrative Code § 20-703.) Concur—Rosenberger, J. P., Wallach, Asch, Kassal and Smith, JJ.

---

as insufficient, citing *Verre v Rosas* (47 NY2d 795, 796). She further concluded that defendant had failed to demonstrate the existence of a meritorious defense.

*11/9/89* Defendant's attorneys moved to be relieved on grounds of irreconcilable differences.

*11/16/89* Motion to relieve attorneys was granted.

*12/20/89* An inquest on damages was held, at which defendant informed the court that he would represent himself. During the proceeding, defendant stated that he would not contest the facts set forth in plaintiffs' notice to admit, which contained all of the dates that defendant's ads appeared in the two newspapers. In addition, defendant said that he would not introduce witnesses, make a closing statement, or otherwise respond to the evidence. The IAS part heard argument from the Department of Consumer Affairs, which sought fines totalling $234,200. When this evidence was completed, defendant reiterated that he did not wish to respond.

The IAS part declined to impose the maximum statutory penalty of $350 for each of the pre-notice ads, as requested by Consumer Affairs, and assessed the minimum, $50. With respect to the post-notice violations, the Court imposed the statutorily-mandated fine of $500 per violation, and granted Consumer Affairs an additional $275 in investigation costs. In total, defendant's penalties amounted to $206,875. The IAS part also granted Consumer Affairs a permanent injunction.