[610 NYS2d 523]

DANIELLE CIPRIANO, an Infant, by Her Father and Natural Guardian, VINCENT CIPRIANO, et al., Appellants, v CHRISTOPHER HANK, Respondent.

First Department, April 26, 1994

APPEARANCES OF COUNSEL

*Louis Venezia, P. C.,* for appellant.

*Philip A. Pollastrino* of counsel *(Barbara H. Daly* and *Linda Gimble,* attorneys), for respondent.

## OPINION OF THE COURT

Tom, J.

In the underlying personal injury action, it is alleged that Danielle Cipriano, an infant of 12 years at the time of the incident, was viciously attacked by defendant-respondent Christopher Hank's (Hank) Rottweiler canine when she accompanied her friend, defendant's daughter, into the basement of the building where defendant lived and worked as a superintendent. Plaintiffs allege that the infant sustained severe and permanent injuries requiring her to be hospitalized for seven days and necessitating further surgery.

Plaintiff-appellant asserts that this action was commenced by personal service of a summons and verified complaint upon Hank at his apartment on September 27, 1991. Plaintiff also commenced a separate action, arising out of the same occurrence, against 227 West 16th Street Owners Corp. (the corporate defendant), which employed Hank, and which owned the building where the incident allegedly occurred.

After Hank failed to answer the complaint, plaintiff, on December 30, 1991, served upon defendant a motion for a default judgment returnable on January 22, 1992. On January 30, 1992, Justice Cohen granted plaintiff's motion on default and on February 25, 1992 plaintiff served defendant with a copy of the default judgment with notice of entry. On June 12, 1992, defendant was further served with a notice of issue for an inquest as to damages.

On or about July 27, 1992, approximately 10 months after institution of this action, defendant served his answer.

Defendant contends that on the day process was allegedly effectuated, he was in Florida visiting his daughter and therefore, he could not have been personally served as alleged by plaintiff's process server.

While the validity of service remains an issue of fact, defendant does not explain the reason why he ignored the three notices served by plaintiff apprising him of his default and the inquest, and waited approximately another seven months before serving an answer. Defendant does not deny

that he received these notices, which were all mailed to his apartment.

However, defendant does claim, rather remarkably, that he first "discovered" that a default judgment had been entered against him on or about December 9, 1992 when plaintiff notified him, by Federal Express, of a pretrial conference relating to the inquest. Defendant maintains that he assumed his answer had been accepted by plaintiff.

In support of the foregoing arguments, defendant relies on correspondence from plaintiff's attorney dated July 21, 1992, August 13, 1992 and September 3, 1992, all of which are captioned "Re: Cipriano vs. 227 West 16th Street Owners Corp." Defendant contends that the July letter, which refers to a singular default judgment, and the August and September letters, which refer to plaintiff's rejection of a singular answer, read in conjunction with the caption which refers only to the corporate defendant, led Hank to assume that no default judgment had been entered against him and that his answer had been accepted. Plaintiff claims, however, that the August and September letters contained both defendants' answers, making it clear that Hank's, as well as the corporation defendant's, answer were being returned and rejected.

The IAS Court granted defendant's motion and vacated the default on the ground that plaintiff will not be unduly prejudiced.

It is well-settled law that a party's default should not be vacated absent a showing of a justifiable excuse for the default and a meritorious cause of action or defense (*Aponte v Raychuk*, 172 AD2d 280, *affd in part and appeal dismissed in part* 78 NY2d 992; *Tandy Computer Leasing v Video X Home Lib.*, 124 AD2d 530).

Even assuming that defendant was mistakenly under a belief that his answer had been accepted, such excuse would mitigate defendant's delay in making the motion to vacate the default judgment and does not, in any manner, excuse defendant's inordinate delay in answering the complaint. It is further noted that the "assumption" by defendant is based on his strained interpretation of the three aforementioned letters forwarded by plaintiff's counsel.

Moreover, even accepting defendant's contention that he did not become aware of the default until December 1992, Hank then waited more than three months, until the eve of the rescheduled pretrial conference concerning damages, to move

to vacate that default. The motion was finally made more than one year after defendant was served with the default judgment and notice of entry.

Defendant's lack of a reasonable excuse, however, is obviated if the court is without personal jurisdiction over defendant, and all subsequent proceedings would be rendered null and void *(McMullen v Arnone,* 79 AD2d 496). In the instant case, however, the trial court should have determined the jurisdictional issue as to service of process before making a ruling on the excusable nature of defendant's default, especially when the record is barren of any showing of a valid excuse *(Mayers v Cadman Towers,* 89 AD2d 844).

Our dissenting colleagues focus on Hank's purported assertion of a meritorious defense, specifically, that the dog's alleged lack of vicious propensities would negate his potential liability to plaintiffs *(see, Landes v H.E. Farms,* 169 AD2d 446). However, a justifiable excuse is also a requisite element for vacatur and Hank's failure to offer an excuse for a delay of seven months in answering the complaint after he obtained knowledge of the action, and another five months before moving for vacatur, evinces not only an inexcusable neglect but a willful default *(see, Back v Stern,* 23 AD2d 837; *Eveready Ins. Co. v Devissiere,* 134 AD2d 323). To condone defendant's action would, in effect, totally eliminate the requirement of a justifiable excuse for vacatur of a default judgment. Under the circumstances of this case, it was an improvident exercise of the trial court's discretion to ignore the established rule pertaining to an excusable default and to summarily vacate Hank's default without a traverse hearing *(see, Torres v Houses "R" Us,* 182 AD2d 684). A traverse hearing should have been conducted to determine whether personal service has been effected, and if the traverse is denied, an inquest should be held and judgment entered in favor of plaintiff accordingly.

Hank's assertions that he did not receive service consist of nothing more than conclusory, self-serving denials, which are not supported by any competent evidence and are expressly contradicted by a letter dated June 17, 1992 from Hank's employer which states that Hank did receive the summons and complaint and had delayed in forwarding it. Hank does not address this letter nor any of the other documents sent by plaintiff which should have placed him on notice of the commencement of the action and the entry of the default judgment.

Accordingly, the order of the Supreme Court, New York County (Beverly Cohen, J.), entered April 26, 1993, which granted defendant-respondent Christopher Hank's motion to vacate the entry of a default as against him, is reversed, on the law, the facts, and in the exercise of discretion, without costs, and the matter is remanded for a traverse hearing in accordance with the foregoing.

WALLACH, J. (dissenting). This is a dog-bite case arising in February 1991, with the action purportedly commenced eight months later. The parties see the allegedly offending dog differently. The adolescent plaintiff, by her guardian and counsel, refers to a "Rottweiler canine animal." To defendant, a building superintendent employed by the separately sued corporate owner of the premises where the alleged bite occurred, his pet was "a puppy" which he had kept for "a couple of months" prior to the incident, during which time it "had never bitten nor attacked anyone."

It is said, loosely speaking, that every dog should have its day. What is less certain is whether every dog should have its day in court, or whether its allegedly vicious propensities (presumably known to its owner) should in this instance be adjudicated on default without hearing a bark, or even a yowl, of protest. Because dogs, in their role as *canis amicus curiae,* have occasionally inspired eloquent judicial utterance *(see, e.g., Schnapp v Lefkowitz,* 101 Misc 2d 1075; *cf., Coleman v Blake,* 128 NYS2d 780), courts should be cautious in reaching such a grimly final outcome. Moreover, it is undisputed here that the dog's asserted lack of vicious propensity would be a meritorious defense to this action *(see, Young v MacIsaac,* 187 AD2d 1038, *lv denied* 81 NY2d 709).

We understand why the majority finds the excuse proffered by the defendant for his default rather paltry, involving as it does considerable dilatory conduct. Nevertheless we find the decision of the motion court an appropriate exercise of its discretion, given the special circumstances presented, and the clear preference of the law for determining litigation on the merits rather than upon default *(Broadhollow Bldrs. v Hartford Fire Ins. Co.,* 178 AD2d 284; *Scott v Allstate Ins. Co.,* 124 AD2d 481, 484).

The imprecations heaped upon defendant's conduct by the majority must be (and are) delivered with a hypothetical hand in view of the gritty fact that defendant has denied proper service of the summons, and to that end the majority directs a

traverse hearing. Even if defendant prevails there, however, the case must still be tried against defendant's corporate employer. Far more conserving of judicial resources was the solution reached by the IAS Court, which relieved the default, albeit sanctioning defendant $500 for his lackadaisical approach. Thus, liability on the merits with respect to defendant and the corporation would have been settled in the same single, consolidated trial without the waste and delay of a traverse, as well as a possible further trial where the aggrieved principal may seek indemnification or contribution from the negligent agent.

The only modification of the IAS Order we would impose would be to add that as a condition of the opening of his default, defendant must file a stipulation to waive any jurisdictional and Statute of Limitations defense, and, *sua sponte,* to consolidate the two actions if this has not already been done.

SULLIVAN and CARRO, JJ., concur with TOM, J.; MURPHY, P. J., and WALLACH, J., dissent in an opinion by WALLACH, J.

Order, Supreme Court, New York County, entered April 26, 1993, reversed, on the law, the facts and in the exercise of discretion, without costs, and the matter remanded for a traverse hearing.