[739 NYS2d 49]

STEPHANIE CRESPO, an Infant, by Her Mother and Natural Guardian, CARMEN NEGRON, et al., Appellants, v A.D.A. MANAGEMENT et al., Defendants, and MANDY ASSOCIATES, LLC, et al., Respondents.

First Department, March 12, 2002

**APPEARANCES OF COUNSEL**

*Diane Welch Bando* of counsel, New York City (*Brian J. Shoot* on the brief; *Schneider, Kleinick, Weitz, Damashek & Shoot,* attorneys), for appellants.

*Robert H. Goldberg* of counsel, New York City (*Michael S. Leyden* on the brief; *Goldberg & Carlton,* attorneys), for respondents.

**OPINION OF THE COURT**

SULLIVAN, J.

In this personal injury action arising out of lead paint exposure at the apartment in which they resided, the injured plaintiff, an infant born on September 23, 1992, and her mother, who sues in both her representative and individual capacity, appeal from the grant of the motion of defendants Mandy Associates, LLC and Finkelstein-Morgan, R.E., Inc., the owner and managing agent, respectively, of the premises involved, to vacate their default in appearing or answering the complaint. Given that defendants offered neither a valid excuse for their default nor a showing of a meritorious defense, both of which, under well settled law, are required to justify such relief, the motion court's decision, for which no reasons were given, was an abuse of discretion.

Mandy Associates, then located at 670 White Plains Road in Scarsdale, New York, as was Finkelstein-Morgan, took title to the subject apartment building, located at 2585 Grand Concourse in the Bronx, in September 1996. Sometime before the commencement of this action in June 1999, both defendants moved to 111 Brook Street, Scarsdale, New York. After filing a summons and verified complaint with the Clerk of Bronx County on June 10, 1999, plaintiffs thereafter, on or about June 24, 1999, served a supplemental summons and amended verified complaint upon defendants by delivering the same, with the necessary filing fee, to the New York Secretary of State pursuant to Business Corporation Law § 306 (b) and Limited Liability Company Law § 303. Plaintiffs also person-

ally served defendants, on or about June 30, 1999, pursuant to CPLR 311 (a) (personal service on a corporation) and 311-a (a) (personal service on limited liability companies), by delivering the supplemental summons and amended verified complaint to a Marcos Cortez as "general agent" at defendants' new offices. According to plaintiffs' affidavit of service, Mr. Cortez accepted service on defendants' behalf at 111 Brook Avenue, Scarsdale, New York.

Subsequently, on or about August 9, 1999, plaintiffs sent each defendant, by certified mail, a letter advising them of the prior service of process upon them through the Secretary of State and by delivery to Mr. Cortez as their "general agent" and that unless an answer was received in 10 days, plaintiffs would request a default judgment. The mailings also included a third copy of the supplemental summons and amended verified complaint. An affidavit of mailing as to each letter was executed on August 10, 1999. Plaintiffs received signed, certified mailing receipts acknowledging delivery of these letters on August 12, 1999.

On March 2, 2000, more than 20 days after the additional copy of the supplemental summons and amended verified complaint with notice had been mailed to defendants, as required by CPLR 3215 (g) (4), plaintiffs moved for a default. The supporting papers included an affidavit of merits from the infant's mother, an affirmation reciting that service of the pleadings had been made pursuant to CPLR 311 (a) (1) by delivery of the pleadings to the Secretary of State and affidavits of service attesting to such service. Supreme Court granted the motion by order entered June 9, 2000, a copy of which, with notice of entry, was served upon each defendant on or about June 30, 2000 by mail addressed to them at 111 Brook Avenue, Scarsdale, New York.

On September 5, 2000, defendants moved, pursuant to CPLR 5015, to vacate the default. In a supporting affidavit, Steven Finkelstein, a member of Mandy Associates and president of Finkelstein-Morgan, stated that defendants had moved to 111 Brook Street, Scarsdale, 1½ years ago, and shortly before the commencement of the action; that "[t]o the best of [his] knowledge at no time did [he] ever receive the [s]ummons and [c]omplaint from the Secretary of State"; that "[he had] no recollection of ever receiving the [n]otice of [m]otion which was apparently sent to an incorrect address"—111 Brook Avenue rather than 111 Brook Street—although, as he conceded, on July 5, 2000, he received a copy of the order granting plaintiffs a default.

As for the merits, Mr. Finkelstein averred that Mandy Associates had taken title to 2585 Grand Concourse on September 18, 1996, and that prior to the purchase a codefendant, Ionic Painting Corp., had been retained to paint the premises, which had also been painted in January 1996 by another codefendant, Nick Sakatis; that "[a]t no time prior to the institution of this lawsuit, was there ever[ ] any notification as to any claim or problem involving lead paint in [a]partments 23 and 24 of this building," that the complaint alleged lead paint contamination for "a substantial period" prior to September 18, 1996, and that after that date defendants had no knowledge of an ongoing lead paint problem.

In opposition, plaintiffs argued that jurisdiction had been obtained over defendants as a matter of law by delivery of the pleadings to the Secretary of State in accordance with statutory requirements and that it was defendants' duty to keep the Secretary of State apprised of their current address at all times. They pointed out that they had also personally served defendants; that they had sent, by certified mail notifying defendants of their default, a third set of pleadings to "111 Brook Avenue," Scarsdale, for which they received signed receipts; that they had sent defendants a total of eight documents addressed to "111 Brook Avenue," none of which had been returned as undeliverable; and that defendants acknowledged receipt of the default order with notice of entry, which, like all the other mailings, had been sent to 111 Brook Avenue.

With respect to the defenses asserted, plaintiff submitted as documentary proof records of the New York City Department of Health indicating numerous notices of a continuing lead problem in apartments 23 and 24 at 2585 Grand Concourse through at least January 1998. Plaintiffs also offered evidence that in June 1997 defendants had hired their own lead paint testing company, which confirmed the existence of a lead problem at the premises.

In their reply, defendants submitted an attorney's affirmation asserting that Marcos Cortez was a receptionist not authorized to accept service on defendants' behalf under the Business Corporation Law, the Limited Liability Company Law or the CPLR. No other proof was offered to support Cortez's claimed lack of authority to accept service for defendants. Defendants also cited plaintiffs' failure to file an affidavit of

mailing, pursuant to CPLR 3215 (g) (4) (i) and (ii), as to the required additional service of the summons and notice before entry of a default judgment. In a sur-reply, plaintiffs submitted the requisite affidavits of mailing. As noted, the motion court, without comment or explanation, granted the motion to vacate the default.

It is axiomatic that the granting of relief from a default judgment rests within the court's sound discretion. The Appellate Division may review the determination for an abuse of discretion or, even in the absence of abuse, may substitute, in its place, its own discretionary determination. (*Ackerson v Stragmaglia*, 176 AD2d 602, 605, citing *Brady v Ottaway Newspapers*, 63 NY2d 1031.) An application brought pursuant to CPLR 5015 to be relieved from a judgment or order entered on default requires a showing of a justifiable excuse and legal merit to the claim or defense asserted. (*See, Salemo v Geller*, 260 AD2d 153; *Cipriano v Hank*, 197 AD2d 295, 297.) After noting that they moved to a new address 1½ years ago, defendants suggest, as the excuse for their failure to appear in the action or answer the amended verified complaint, formally served upon them twice and mailed to them once, that they never received the process served on the Secretary of State. Defendants offered no proof whatever to support their attorney's assertion that "[i]t appears that the Secretary of State had not recorded [defendants'] change in address." Indeed, they did not even assert that they notified the Secretary of State of their change of address. The affidavits of service contained in the record reveal only that the supplemental summons and amended verified complaint were delivered to the Secretary of State for service; they do not indicate the address to which the Secretary of State mailed the documents or the respective address for defendants on file with the Secretary of State.

More important, though, even had defendants made a showing that the Secretary of State delivered process to an address other than where they were actually located, the excuse would not suffice since defendants had the obligation to keep the Secretary of State advised of their current and correct address. (*Cedeno v Wimbledon Bldg. Corp.*, 207 AD2d 297, *lv dismissed* 84 NY2d 978.) The failure of a corporate defendant to receive service of process due to breach of the obligation to keep a current address on file with the Secretary of State (*see*, Business Corporation Law § 306) does not constitute a reasonable

excuse. (*Lawrence v Esplanade Gardens*, 213 AD2d 216; *Cedeno v Wimbledon Bldg. Corp.*, *supra* at 298.)[1]

Defendants' attack on the alternate service relied upon, that is, the service of the supplemental summons and amended complaint by delivery of the same to Marcos Cortez as defendants' "general agent," is based on nothing more than their attorney's bald assertion that Cortez was a mere receptionist, without any showing as to Cortez's job responsibilities or actual authority to receive process. At best, such an allegation would entitle defendants to a traverse on the issue of Cortez's authority. Given the validity of the service on the Secretary of State, which was the sole jurisdictional basis for the entry of the default, such a hearing is unnecessary.

Nor did plaintiffs' failure to file the affidavits of service of the notice/mailing required by CPLR 3215 (g) (4) provide a basis for vacating the default. It bears emphasizing that the only defect in this regard was the failure to submit as part of the motion for a default the affidavits of service of the notice/mailing sent to defendants and to file the same with the default judgment. And it is also worth noting that plaintiffs did, in fact, comply with the substantive requirements of CPLR 3215 (g) (4). They did make an additional service of the supplemental summons by first-class mail on defendants accompanied by the appropriate notice of the earlier service at least 20 days before the entry of judgment.

In the case of CPLR 3215 (g) (3) (i)'s notice requirements, even a total lack of compliance will not defeat a default motion where there is neither a meritorious defense nor other objection shown. (*Rothschild v Finkelstein*, 248 AD2d 701; *Fleet Fin. v Nielsen*, 234 AD2d 728, 729-730.) That being so, where, as here, the required notice under CPLR 3215 (g) (4) has been given and neither a meritorious defense nor reasonable excuse shown, the mere failure to file timely the affidavit of mailing showing such statutory compliance should impose no bar to the granting of a default judgment.

While defendants' failure to establish an excusable default renders moot their claim of a meritorious defense, review of the record shows that they cannot meet their burden in this regard either. Defendants assert three strands of a defense,

---

1. While "there is no per se rule that a corporation served through the Secretary of State, and which failed to update its address on file there, cannot demonstrate an 'excusable default' " (*Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co.*, 67 NY2d 138, 143), here, defendants have failed to demonstrate a reasonable excuse for their default.

the first of which, that the presence of lead paint at the premises after Mandy Associates took title was attributable to other parties, namely, the painters, also defendants herein, who had either painted the apartments before Mandy Associates purchased the building or before the recording of the deed transferring title to it, is utterly without merit. Pursuant to Multiple Dwelling Law § 78, defendants had a nondelegable duty to keep the premises in good repair and, under Administrative Code of the City of New York § 27-2013(h),[2] to abate lead paint in apartments where children six years or under reside. (*Juarez v Wavecrest Mgt. Team*, 88 NY2d 628; *Nieves v 1097 Walton Realty Co.*, 220 AD2d 329; *Morales v Felice Props. Corp.*, 221 AD2d 181.) As this record discloses, at the time of the claimed exposure, the infant plaintiff was within the specified age limit.

Defendants' second defense, that after taking title to the premises they had no notice of any problem involving lead contamination, is, as the record discloses, demonstrably false. Numerous Department of Health inspection reports, which postdate Mandy Associates' purchase of the building by more than a year, reveal ongoing lead contamination in the two apartments occupied by the infant plaintiff and her mother. Defendants' own privately commissioned inspection report showed lead contamination in both apartments six months after Mandy Associates took title. As to one of them, the lead paint condition remained unabated as late as May 7, 1998. Of course, even if true, defendants' lack of actual knowledge of a lead condition at the premises would not provide a defense under the lead abatement provisions of the Administrative Code of the City of New York (Local Law No. 1 [1982] of City of New York) if defendants were aware that the infant plaintiff resided in an apartment at the subject premises. (*Juarez v Wavecrest Mgt. Team, supra*, 88 NY2d 628.) Defendants do not address this aspect of the case at all. The third asserted defense, that the infant plaintiff's exposure to lead contamination took place before Mandy Associates' purchase of the premises, fails because the proof shows continued exposure to lead paint after defendants took over ownership and control.

We have considered defendants' other claims and find them to be without merit.

---

2. Subdivision (h) was repealed by Local Law No. 38 (1999) of City of New York § 1, effective November 12, 1999 and its provisions transferred to sections 27-2056.1—27-2056.10.

Accordingly, the order of the Supreme Court, Bronx County (Joseph Giamboi, J.), entered January 18, 2001, which granted the motion of defendants Mandy Associates, LLC and Finkelstein-Morgan, R.E., Inc. to vacate their default, should be reversed, on the law, without costs or disbursements, and the motion denied.

TOM, J.P., MAZZARELLI, WALLACH and MARLOW, JJ., concur.

Order, Supreme Court, Bronx County, entered January 18, 2001, reversed, on the law, without costs or disbursements, and the motion of defendants Mandy Associates, LLC and Finkelstein-Morgan, R.E., Inc. to vacate their default denied.